UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                Plaintiff,

        - against -

KARIM GAZZAH, individually and d/b/a
TAJ MAHAL LOUNGE, and TAJ MAHAL
LOUNGE CORP., an unknown business
Entity d/b/a Taj Mahal Lounge,

                Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

19 CV 2385 (ARR)(CLP)

On April 24, 2019, plaintiff J & J Sports Productions, Inc. ("plaintiff" or "J&J")

commenced this suit against Karim Gazzah, individually and d/b/a Taj Mahal Lounge

("Gazzah"), and Taj Mahal Lounge Corp., an unknown business entity d/b/a Taj Mahal ("Taj

Mahal Lounge") (collectively, "defendants"), alleging violations of 47 U.S.C. §§ 605 and 553.

On August 18, 2020, the plaintiff moved for default judgment against the corporate

defendant, and the action was subsequently referred to the undersigned by the Honorable Allyne

R. Ross to conduct an inquest and prepare a Report and Recommendation.

For the foregoing reasons, this Court respectfully recommends that, pursuant to 47 U.S.C.

§§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded damages of

$6,600 from the corporate defendant, Taj Mahal Lounge.[1]

---

[1] The Court notes that although the statute authorizes an award of attorneys' fees, see 47 U.S.C. §
605(e)(3)(B)(iii), plaintiff has requested 30 days from the date of judgment to file for fees. (Plaintiff's
Memorandum in Support of Application for Default Judgment, dated August 18, 2020 ("Pl.'s Mem."),
ECF No. 25-1 at 10).

FACTUAL BACKGROUND

In the Complaint, plaintiff alleges that it entered into a closed-circuit television licensing agreement with Golden Boy Promotions, LLC, which granted plaintiff the exclusive rights to commercially distribute the May 7, 2016 to the WBC World Middleweight Championship Fight Program between Saul Alvarez and Amir Khan, including all undercard and preliminary bouts encompassed in the television broadcast of the event (the "Program"), at commercial establishments such as theaters, arenas, bars, clubs, lounges, and restaurants throughout New York. (Compl.[2] ¶ 17; Pl.'s Mem. at 1; Gagliardi Aff.[3] ¶ 3). These closed-circuit locations could only obtain access to the broadcast by entering into a contractual relationship with plaintiff. (Compl. ¶ 19; Gagliardi Aff. ¶¶ 3, 8, 9).

Plaintiff alleges that Taj Mahal Lounge is a commercial establishment organized under the laws of the State of New York with its principal place of business located at 2527 Steinway Street, Astoria, NY 11103. (Compl. ¶ 8; Pl.'s Mem. at 2). Defendant Karim Gazzah, identified as the President and Principal of Taj Mahal Lounge, is alleged to have owned and operated the Taj Mahal Lounge, with the right and ability to supervise the activities alleged in the Complaint. (Compl. ¶ 10). Plaintiff alleges that on the night of May 7, 2016, Gazzah specifically directed the employees of Taj Mahal Lounge to unlawfully intercept, receive and broadcast the Program, or intentionally intercepted, received and broadcast the Program himself. (Id. ¶ 12).

On May 7, 2016, at approximately 10:05 p.m., Stephanie Osgood, an investigator with Omni Present Investigations, employed by plaintiff, entered Taj Mahal Lounge, where she

---

[2] Citations to "Compl." refer to plaintiff's Complaint, dated April 24, 2019, ECF No. 1.
[3] Citations to "Gagliardi Aff." refer to the Affidavit of Joseph M. Gagliardi, President of J&J Sports Productions, Inc., dated July 30, 2020, ECF No. 14-2.

observed the Program being broadcast to patrons of the defendant establishment. (Osgood Aff.[4] at 1). Osgood states that she was not required to pay a cover charge to enter the establishment. (Id.) Inside, she observed four television sets and approximately 65 patrons on the premises at the time of the broadcast. (Id. at 1-2). She represents that upon her arrival at 10:05 p.m., she observed introductions in the ring of Glen Tapia and David Lemieux, with Tapia wearing white trunks and Lemieux wearing black trunks. (Id. at 1). The Tapia v. Lemieux bout was an undercard bout and part of the Program. (Gagliardi Aff. ¶ 7).

Plaintiff asserts that defendants were not authorized to display the Program and that showing the Program was a violation of federal law. (Compl. ¶¶ 29-33; Gagliardi Aff. ¶¶ 3, 7). Plaintiff further asserts that the Program could not be intercepted "mistakenly, innocently, or accidentally," and has detailed several ways in which the Program could be illegally intercepted. (Gagliardi Aff. ¶¶ 9, 10(A-E)).

On April 24, 2019, plaintiff commenced this action, seeking statutory damages pursuant to 47 U.S.C. §§ 553 and 605. On May 7, 2019, plaintiff served copies of the Summons and Complaint upon the defendant Taj Mahal Lounge by delivering a copy of the Summons, Complaint and Civil Cover sheet to Amy Lesch as Business Document Specialist of the Secretary of State, being the registered agent pursuant to Section 306 of the BCL. (Aff. of Serv.,[5] Ex. 4). Defendant Gazzah was personally served on May 8, 2019. (ECF No. 7). Defendants answered the Complaint and initially appeared through counsel. (ECF No. 9; Minute Entry dtd. 7/1/2019). When defendants' counsel subsequently withdrew from representation,

---

[4] Citations to "Osgood Aff." refer to the Affidavit of Stephanie Osgood, Investigator for Plaintiff, dated May 8, 2016, and submitted as Exhibit 5 to the Declaration of Plaintiff's Counsel, Robert B. Hunter, in Support of Application for Default Judgment by the Court ("Hunter Decl."), ECF No. 14.

[5] Citations to "Aff. of Serv." Refer to the Affidavit of Service sworn to by James Boland, Process Server, with Rondout Legal Services, Inc., attached as Ex. 4 to the Hunter Decl.

defendant Gazzah appeared *pro se* before the Court. (Minute Entry dtd. 3/4/2020). However, no counsel appeared for Taj Mahal Lounge. (Id.) The Court recommended that default enter against it upon request by the plaintiff. (Order dtd. 7/9/2020[6]). Defendant Gazzah failed to appear at two conferences before the Court, and did not comply with the Court's Order to contact the Court in writing by August 9, 2020 if he wished to proceed *pro se*. (Id.)

On July 16, 2020, plaintiff filed a Request for Certificate of Default with the Clerk of Court as to defendant Taj Mahal Lounge, ECF No. 23, and on July 22, 2020, default was entered against defendant Taj Mahal Lounge. Plaintiff has not sought entry of default as to defendant Gazzah. Plaintiff requests an award of $26,400.00 for defendant's willful violation under 47 U.S.C. §§ 605(c)(3)(C)(i)(II) and 605(e)(3)(C)(ii). (Hunter Decl. ¶ 8). Plaintiff also requests pre- and post-judgment interest at the federal statutory rate. (Id.) Additionally, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff is entitled to costs and attorneys' fees. Plaintiff seeks attorneys' fees and relevant costs but requests that J & J "be granted 30 days from the date the judgment becomes final to submit its Motion for costs and attorneys' fees." (Pl.'s Mem. at 10).

DISCUSSION

A.    Default

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. See id.; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a

---

[6] ECF No. 22.

judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

is shown by affidavit or otherwise, the clerk must enter the party's default").

After a default has been entered against a party, if that party fails to appear or otherwise

move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See

Fed. R. Civ. P. 55(a). If the amount of damages must be ascertained in order for a default

judgment to be entered, the Court may conduct a hearing. See Fed. R. Civ. P. 55(b)(2); Enron

Oil Corp. v. Diakuhara, 10 F.3d at 95. Here, plaintiff submitted a request for entry of default

dated December 6, 2018. The Clerk of the Court entered a default on December 10, 2018, and

on April 2, 2019, the district court referred the motion for default judgment to the undersigned.

In determining whether a default judgment should be entered, courts have cautioned that

a default judgment is an extreme remedy that should only be granted as a last resort. See

Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized

the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed

expeditiously [and] . . . delay and clog its calendar," it has held that the district court must

balance the interest in expediting cases with the court's responsibility to "[afford] litigants a

reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 96. Thus, in light of

the "oft-stated preference for resolving disputes on the merits," defaults are "generally

disfavored," and doubts should be resolved in favor of the defaulting party. Id. at 95-96.

Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply

because the defendants are in default. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992

WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992); see also Erwin DeMarino Trucking Co. v. Jackson,

838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default

judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *1-2.  The greater the amount of money involved, the less justification there may be for entering the default judgment.  See id.  Additionally, a court may consider whether material issues of fact remain, see Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012), whether the facts alleged in the complaint state a valid cause of action, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981), whether plaintiff has been substantially prejudiced by the delay involved, see Arthur F. Williams, Inc. v. Helbig, 208 F.R.D. 41, 44-45 (E.D.N.Y. 2002), and how harsh the effect of a default judgment might be on the defendant.  Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 10A Federal Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (gathering cases).  For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

Plaintiff alleges that the defendants violated 47 U.S.C. §§ 553(a)(1)[7] and 605(a) through the unauthorized reception of plaintiff's satellite communications.  However, a court is not permitted to grant damages under both statutes for a single illegal transmission.  See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008-09 (2d Cir. 1993).  Rather, the Second Circuit has stated that where a defendant is found to have violated both statutes, the court should award damages pursuant to Section 605.  Id.; see also Garden City Boxing Club, Inc. v. Polanco, No. 05 CV 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 F. App'x 29, 30 (2d Cir. 2007).  Since the Court finds that plaintiff has sufficiently stated a claim for a violation of Section 605, the Court has considered plaintiff's request for damages only under Section 605, and not under Section 553.

Here, it is clear that the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605.  Section 605(a), which provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person," 47 U.S.C. § 605(a), has been held to apply to the interception of cable communications originating as a satellite or radio transmission.  See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 131-32 (2d Cir. 1996), cert. denied, 519 U.S. 929 (1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *4; Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997).  Thus,

---

[7] Section 553(a)(1) provides, in pertinent part, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

defendants' alleged conduct – the unauthorized interception, receipt, and broadcast of the Program from satellite communications – violates this statute.

It is beyond dispute that the corporate defendant, Taj Mahal Lounge, is in default because it has not obtained counsel, and failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel).  Additionally, unlike those instances where courts have been hesitant to enter default judgment because there were potentially millions of dollars at stake, the amount of money involved in this case is not significant.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).

Here, the corporate defendant has  not retained new counsel to appear in this action, despite multiple opportunities afforded by the Court.  The corporate defendant also failed to respond to plaintiff's motion for entry of default judgment and did not contest plaintiff's damages calculations.[8]

Accordingly, the Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted as to the corporate defendant.

_____

[8] Although defendant Gazzah is named individually in the Complaint and is alleged to be the President and Principal of Taj Mahal Lounge, it does not appear that plaintiff is seeking to impose liability on him at this time.

C.    Damages

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery "in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, the Court has made its determination after reviewing plaintiff's affidavits and exhibits pertaining to the damages incurred.

1.    Statutory Damages

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). In this instance, plaintiff has elected to recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). (Pl.'s Mem. at 5; see Gagliardi Aff. ¶ 14).[9]

Section 605 provides for penalties "for each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added). Although Section 605 requires the court to assess damages based on each "violation" of the statute, there is no statutory definition of "violation."

---

[9] As noted above, see discussion supra at 7, a plaintiff may only recover damages under one statute when there is a single illegal transmission. See International Cablevision, Inc. v. Sykes, 997 F.2d at 1009. Therefore, in accordance with Second Circuit precedent, the Court recommends that plaintiff receive an award of damages pursuant to Section 605. Id.; see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *5.

See Garden City Boxing Club, Inc. v. Rosado, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005).  Moreover, in cases such as this, involving the theft of services by a commercial establishment, it is often difficult to assess a precise figure.  However, most cases applying this statute in a commercial context have interpreted the showing of a single event on a single night as one violation.  See, e.g., id.; Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111.

In determining the amount of damages that may be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court.  See 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing an award from $250,000 to $10,000 for commercial broadcast of a boxing match); Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. at 111 (citing cases).  The factors to be considered in determining the appropriate amount of damages include the "'pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'"  Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (interpreting 47 U.S.C. § 553)); see also J & J Sports Productions, Inc. v. Mangos Steakhouse & Bakery, No. 13 CV 5068, 2014 WL 2879868, at *6 (E.D.N.Y. May 7, 2014); Entertainment by J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In calculating lost profits, some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment.  See, e.g., Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003

WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum where plaintiff failed to establish any actual damages because plaintiff did not submit evidence of the cost of the license fee for defendants to broadcast the boxing event legally); Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons"); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. at 484 (awarding statutory damages of $10,000 where it found the statutory maximum of $250,000 to be excessive).

Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast.  See, e.g., Garden City Boxing Club v. Rosado, 2005 WL 3018704, at *3-4 (multiplying the number of patrons present at the unauthorized broadcast by the residential charge for the pay-per-view event being shown, $54.95); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4-5 (E.D.N.Y. Mar. 28, 2003) (awarding $50 per patron); Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., 2002 WL 2022522, at *3 (same); Time Warner Cable of New York City v. Googies Luncheonette, Inc. ("Googies"), 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111 (same); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

In this case, plaintiff contends that it has suffered a loss of $2,200.00, which is the licensing fee amount that plaintiff would have received had defendants entered into a contract with plaintiff to broadcast the Program.  (Pl.'s Mem. at 8; Gagliardi Aff. ¶ 8, Ex. 2).  Apart from the actual damages that plaintiff has calculated, plaintiff asserts more specifically that signal piracy causes a reduction in its lawful business because of the "perceived lack of significant

consequences" for such behavior.  (Gagliardi Aff. ¶¶ 12, 13).  Plaintiff claims its business suffers as a result of signal piracy costing the company, its customers, and their communities.  (Id. ¶ 13).  Further, plaintiff argues there is a "reasonable presumption" that defendants obtained additional profits as a result of the illegal showing of the Program.  (Id. ¶ 17; Pl.'s Mem. at 7-8).

Plaintiff requests statutory damages of $6,600, representing three times the licensing fee that Taj Mahal Lounge would have paid for authorization to broadcast the Program lawfully.  (See Pl.'s Mem. at 8).  Plaintiff contends that neither of the two typical methods of calculating damages should be used in this case, and that the Court should instead award a higher amount, because such award fails to compensate plaintiff adequately and would create a "perverse incentive for an individual to attempt to break the law."  (Id. at 8).

2.  Application

Where there is uncontradicted evidence of the number of patrons viewing an unauthorized program in an establishment, some courts have calculated the award of damages by multiplying the individual residential rate to receive the transmission by the number of patrons present, and adding to this any other cover charges and profits that can be attributed to the unauthorized viewing.  J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at *3 (E.D.N.Y. Jul. 27, 2018); see also J & J Sports Prods., Inc. v. Arhin, No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. April 17, 2009).  However, that amount fails to approach the actual lost revenues to plaintiff.  Plaintiff has stated that lost revenues in this case equal $2,200.00, based on the fee that would normally be charged to a commercial establishment with a capacity of 1-100 persons.  (Pl.'s Mem. at 8).

Awarding the plaintiff $2,200.00 in lost revenues constitutes an award greater than the statutory minimum of $1,000.  See 47 U.S.C. § 605(e)(3)(C)(ii); Kingvision Pay-Per-View Ltd.

v. Autar, 426 F. Supp. 2d 59, 63-64 (E.D.N.Y. 2006) (awarding $1,000 where multiplying the number of patrons by $50 would lead to a total less than the statutory minimum); see also J & J Sports Prods., Inc. v. LGD Williams, LLC, 2011 WL 5402031, at *4 (explaining that "courts use per-patron calculations as a 'starting point' for calculating damages . . . rather than as an exhaustive analysis where the sum of per-patron damages is less than the fee that an establishment would have paid for a sublicense to broadcast the event") (citations omitted). Other courts in this district have calculated damages by multiplying the residential rate by the number of patrons present, and then adding that amount to the licensing fee.  See, e.g., J & J Sports Prods., Inc. v. The Afrikan Poetry Theatre, Inc., No. 17 CV 2196, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018).  However, the plaintiff did not provide the court with the residential rate in this case, asserting that "as this is a default case, Plaintiff cannot calculate the profits for the Defendant."  (Pl.'s Mem. at 8).

In this case, plaintiff asked the court not to use either of the approaches discussed above, but rather to award statutory damages based on three times the licensing fee.  Plaintiff cites a variety of cases outside this district and circuit where courts have used this method.  See, e.g., J & J Sports Prods., Inc. v. Tonita Rest., LLC, No. 13 CV 0382, 2015 WL 9462975 (E. D. Ky. Dec. 28, 2015); Joe Hand Promotions, Inc. v. Sheedy, No. 08 CV 1797, 2011 WL 4089534 (D. S. C. July 29, 2011).  As plaintiff noted, previous approaches by courts in the Second Circuit would award statutory damages equivalent to the sublicensing fee of $2,200.00.  (Pl.'s Mem. at 8).  Although the Court has reviewed these out-of-circuit cases cited by plaintiff, the Court respectfully recommends applying the methodology typically used to calculate statutory damages in the Second Circuit, which would result in an award of $2,200.00 in statutory damages.

3. Enhanced Damages for Willfulness

Plaintiff also seeks enhanced statutory damages pursuant to Sections 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii), providing for additional awards of up to a maximum of $100,000.00 for all willful violations. (Pl.'s Mem. at 9-10). The statute permits enhanced damages where the violation was committed willfully and for purposes of private financial gain. See, e.g., Entertainment by J & J, Inc. v. Ramsarran, 2002 WL 720480, at *2 (awarding statutory damages of $5,000, increased by $10,000 for willfulness under 47 U.S.C. § 605(e)(3)(C)(ii), where defendant displayed a boxing match to eighteen patrons in his bar); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12 (awarding statutory damages of $3,750, increased by $5,000 for willfulness under section 605(e)(3)(C)(ii), where defendant displayed a boxing match to seventy-five people inside and twenty people outside his restaurant). This section clearly applies to persons or entities that operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to their patrons. See id.

In determining whether an enhanced award for willful conduct is warranted, some precedents suggest that the simple fact the Program was intercepted and broadcast without permission is an indication of willfulness. See, e.g., J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, No. 14 CV 2765, 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015); J & J Sports Prods., Inc. v. Nest Restaurant & Bar, Inc., No. 17 CV 2194, 2018 WL 4921657, at *8 (E.D.N.Y. July 17, 2018). Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'" ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)). Courts also consider five factors to determine whether willful conduct warrants an award of enhanced damages: "whether there is evidence of (i) repeated violations; (ii) significant

actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." See J & J Sports Prod., Inc. v. LX Food Grocery Inc., 2016 WL 6905946, at *5 (citations and internal quotation marks omitted).

In determining the enhanced damages for willful conduct, courts take varying approaches. Some courts have awarded treble damages for willful violations. See, e.g., J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *3 (E.D.N.Y. Apr. 27, 2010) (awarding plaintiff an enhancement of three times the statutory damages award of $2,747.50, or $8,242.50, for willfulness, for a total award of $10,990); J & J Sports Productions, Inc. v. Benson, 2007 WL 951872, at *5 (awarding statutory damages of $1,200, plus enhanced damages of $3,600, for a total of $4,800 where plaintiff did not advertise the event, charged no cover, and five patrons were present); J & J Sports Prods., Inc. v. Forbes, No. 07 CV 4394, 2008 WL 5263732, at *1 (E.D.N.Y. Dec. 17, 2008) (awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages for willfulness, for a total of $4,000.00); J & J Sports Prods., Inc. v. Drake, No. 06 CV 246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006) (same).

Other courts have doubled the statutory damage award to arrive at enhanced damages. See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., No. 12 CV 5355, 2013 WL 6192546, at *6-7 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages of $9,011.80, or two times the statutory damages of $4,505.90, for a total of $13,517.70, where plaintiff was not paid a licensing fee and defendant charged a cover fee of $20); Joe Hand Promotions, Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *8 (E.D.N.Y. May 29, 2013) (awarding $1,538.60 in statutory damages plus two times that, $3,077.20 in enhanced damages, for a total award of $4,615.80); Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc., No. 07 CV 3849,

2012 WL 4328355, at *5 (E.D.N.Y. June 21, 2012) (awarding $4,396.00 in enhanced damages, plus statutory damages of $2,198.00, where violations were willful but there was no evidence of past or future violations), report and recommendation adopted, 2012 WL 4328347 (E.D.N.Y. Sept. 19, 2012); J & J Sports Prods., Inc. v. Tellez, 2011 WL 6371521, at *6 (E.D.N.Y. Dec. 20, 2011) (awarding $4,670.75 in statutory damages plus two times that amount or $9,341.50, representing enhanced damages where plaintiff showed no evidence of prior violations and where the revenues defendant earned were unclear).

Still other courts have awarded enhanced damages in an amount equal to that awarded for statutory damages. See, e.g., J & J Sports Prods. Inc. v. Orellana, 2019 WL 1177719, at *7 (awarding statutory damages of $3,000 and enhanced damages of $3,000); J & J Sports Prods. Inc. v. Johnny's Restaurant, Bar & Lounge Inc., 2016 WL 8254906, at *7 (E.D.N.Y. Dec. 15, 2016) (awarding damages of $3,297 and enhanced damages of $3,297); J & J Sports Prods., Inc. v. LDG Williams, LLC, 2011 WL 5402031, at *1 (awarding statutory damages of $2,534.15 and enhanced damages of $2,534.15 for willfulness); Entertainment by J & J, Inc. v. Friends II, Inc., No. 02 CV 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) (awarding statutory damages of $2,500 and enhanced damages of $2,500); Entertainment by J & J Inc. v. Nina's Rest. & Catering, No. 01 CV 5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (same).

Finally, sometimes a court awards no enhancement. See, e.g., J & J Sports Prods., Inc. v. Martinez, No. 07 CV 3455, 2009 WL 1913239, at *2 (E.D.N.Y. June 30, 2009) (awarding $3,000 in statutory damages and zero enhanced damages for an establishment with 40 patrons where plaintiff failed to show "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [or] defendant's charging a cover charge or charging premiums

for food and drinks" (internal quotation marks and citation omitted)); J & J Sports Prods., Inc. v. Monte Limar Sports Bar, No. 15 CV 3771, 2017 WL 933079, at *5 (E.D.N.Y March 8, 2017) (awarding $2,200 in statutory damages and zero in enhanced damages because, although there were 100 patrons present, the court found no evidence of significant profit or commercial advantage); J & J Sports Productions, Inc. v. LX Food Grocery, Inc., 2016 WL 6905946, at *5 (awarding $2,200 in statutory damages and zero in enhanced damages where the auditor observed five patrons in the Establishment and the court found no evidence of commercial benefit); J&J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *5-6 (E.D.N.Y. May 16, 2006) (awarding $2,500 statutory damages and zero enhanced damages for a barbershop in which five patrons were present because there was no evidence that defendants exhibited the Event for commercial advantage).

Plaintiff alleges that defendants intercepted and broadcasted the Program without entering into a licensing agreement with plaintiff or paying fees to plaintiff. To accomplish this, defendants could have utilized an unauthorized decoder, illegally transferred an authorized decoder to the location, illegally altered cable service to bring the signal to the defendant's establishment or misrepresented the commercial establishment as a residential property to allow purchase of the Program at the residential price. (See Gagliardi Aff. ¶ 9). The defendants then broadcast the Program to their patrons.

While plaintiff's allegations support a finding that defendant's conduct was willful, and plaintiff has alleged that signal piracy has resulted in losses in revenue, plaintiff has failed to allege what those losses might be. Although plaintiff has not alleged that defendant has repeatedly violated the statute, nor is there any evidence that a cover charge was collected, the investigator observed 50 patrons present at the time the Program was being broadcast. Given the

nature of the establishment and the number of patrons present, some of whom presumably consumed food or beverages, it is likely that defendant profited from the presence of patrons there to observe the Program.  To the extent that defendant's failure to pay for a license constitutes "actual damages," that cost is already factored into plaintiff's statutory damages award.  However, that amount alone does not compensate plaintiff for the loss of good will among the other establishments which paid the licensing fee to display the Program legally. Given plaintiff's undisputed allegations in support of a finding that the defendant had to have acted willfully using some unlawful means to intercept the Program,  the Court recommends an additional award of $4,400.00 for the willfulness of this violation.[10]

This amount is in line with previous awards made by courts in the Eastern and Southern Districts of New York.  See, e.g., Joe Hand v. Kings Point Restaurant, No. 17 CV 1870, 2017 WL 6611571 (E.D.N.Y. 2017) (awarding plaintiff a total of $4,555 in damages for an establishment where approximately twenty patrons were present); J & J Sports Productions, Inc. v. Benson, 2007 WL 951872, at *5 (awarding plaintiff treble enhanced damages based solely on willful signal interception); J & J Sports Productions, Inc. v. Orellana, 2019 WL 1177719, at *6 (awarding plaintiff $3,000 in statutory damages based on the legal licensing fee and $3,000 in enhanced damages to penalize the defendant for signal piracy).

Accordingly, the Court respectfully recommends that the district court approve the total recommended statutory and enhanced damages of $6,600.00 as sufficient to compensate plaintiff and to deter future illegal conduct on the part of defendant.

---

[10] One court in this district has noted that it is conceivable that a small business owner could accidentally sign up for residential cable service, or that an error on the part of a cable service provider could lead to a business being improperly categorized as a residence, thereby bringing into question whether or not a defendant willingly committed the violation.  See J & J Sports Prod., Inc. v. Louisias, 2006 WL 1662608, at *4.  However, given that in this case defendant has defaulted, this Court declines to speculate as to potential excuses for what appears to be a willful interception of the Program.

3. <u>Prejudgment Interest</u>

Plaintiff also requests prejudgment interest at the federal statutory rate.  (Pl.'s Mem. at 18).  Section 605 does not provide a statutory basis for such an award of interest.  <u>See Entertainment by J&J Inc. v. Miraldo Rest., Inc.</u>, No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at *16 (S.D.N.Y. Apr. 23, 2003), <u>report and recommendation adopted</u>, 2003 U.S. Dist. LEXIS 9624, at *4-5, 2003 WL 21345562 (S.D.N.Y. June 10, 2003); <u>see also</u> <u>DIRECTV, Inc. v. Montes</u>, 338 F. Supp. 2d 352, 356 (D. Conn. 2004); <u>DIRECTV, Inc. v. Getchel</u>, No. 3:03 CV 2073, 2004 WL 1202717, at *4 (D. Conn. May 26, 2004).  The district court may nevertheless choose to award pre-judgment interest.  <u>See</u> <u>Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.</u>, 67 F.3d 1063, 1071 (2d Cir. 1995) (holding that "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted 'are matters confided to the district court's broad discretion'") (citation omitted).  "The Second Circuit has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization 'when the awards were fair, equitable and necessary to compensate the wronged party fully.'"  <u>Garden City Boxing Club, Inc. v. Rojas</u>, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2006) (quoting <u>Wickham Contracting Co., Inc. v. Local Union No. 3</u>, 955 F.2d 831, 836 (2d Cir. 1992)).

However, pre-judgment interest is generally awarded only in "exceptional cases."  <u>Am. Honda Motor Co., Inc. v. Two Wheel Corp.</u>, 918 F.2d 1060, 1064 (2d Cir. 1990) (internal quotation marks and citation omitted).  Plaintiff has not provided any reason for awarding pre-judgment interest under the circumstances, and since the Court finds that plaintiff has been sufficiently compensated, the Court respectfully recommends that pre-judgment interest not be awarded.

D.    Plaintiff's Attorneys' Fees and Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to costs and reasonable attorneys' fees.  See 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails"); see also Int'l Cablevision v. Sykes, 997 F.2d at 1009.  Plaintiff requests "that it be granted 30 days from the date the judgment becomes final to submit its Motion for costs and attorneys' fees."  (Pl.'s Mem. at 10).  This practice of submitting a motion for fees and costs following the order of the district court has been accepted in this district.  See J & J Sports Productions, Inc. v. Reynolds, No. 18 CV 2540, 2019 WL 1299408, (E.D.N.Y. Jan. 11, 2019), report and recommendation adopted, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019) (recommending that plaintiff be permitted to file a separate motion with attorneys' fees and costs within 30 days after the district judge's order on the report and recommendation); J & J Sports Productions, Inc. v. Guncay, No. 18 CV 2097, 2018 WL 6313210, at *5 (E.D.N.Y. Oct. 17, 2018), report and recommendation adopted, 2018 WL 6308773 (Dec. 3, 2018) (same); J & J Sports Productions, Inc. v. Brown, No. 18 CV 2489, 2019 WL 612225 (E.D.N.Y. Jan. 10, 2019), report and recommendation adopted, 2019 WL 591544 (E.D.N.Y. Feb. 13, 2019) (same).

The Court therefore respectfully recommends that plaintiff be permitted to submit a motion for attorneys' fees, including an affidavit and contemporaneous time records establishing the amount of attorneys' fees and costs it seeks to recover, 30 days from the date this Report and Recommendation is ruled upon.  See J & J Sports Productions, Inc. v. Alvarez, No. 07 CV 8852, 2009 WL 3096074, at *7 (S.D.N.Y. Sept. 25, 2009) (declining to award plaintiff attorney's fees because of the failure to keep contemporaneous time records).

CONCLUSION

Accordingly, this Court respectfully recommends that plaintiff be awarded $6,600.00 in statutory and enhanced damages from defendant Taj Mahal Lounge, and that plaintiff be permitted to submit a motion for attorneys' fees 30 days from the date this Report and Recommendation is ruled upon.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onandaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file proof of such service on the record within two weeks of the date of this Report.


**SO ORDERED**.

Dated: Brooklyn, New York
February 19, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York

21